IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| ALTON FARIAS,<br><br>        Plaintiff,<br><br>    vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br><br>        Defendant. | Civil No. 25-00139 MWJS-KJM<br><br>ORDER REVERSING DECISION OF THE<br>COMMISSIONER OF SOCIAL SECURITY<br>AND REMANDING FOR FURTHER<br>ADMINISTRATIVE PROCEEDINGS |

## INTRODUCTION

Plaintiff Alton Farias, who is known as "Miki," applied for Social Security disability benefits, supporting the application with four favorable medical opinions. The Commissioner, acting through an Administrative Law Judge, found each opinion unpersuasive and denied Farias' application. Farias now appeals, contending that the ALJ did not provide adequate explanations for rejecting the medical opinions. Farias further argues that the errors were not harmless. The court agrees on both fronts and therefore REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

//

//

## BACKGROUND

The Social Security regulations require ALJs to follow "a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also* 20 C.F.R. § 404.1520.

The ALJ's written decision in this case proceeded through each step. At step one, the ALJ found that Farias was not engaged in any substantial gainful activity. Dkt. No. 8-1, at PageID.51 (Administrative Record (AR) at 31). At step two, the ALJ found that Farias had several severe impairments: left hand/wrist contracture; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder; gender identity disorder; avoidant personality disorder; and amphetamine type substance use disorder, severe, in early remission. *Id.*[1] At step three, the ALJ determined that Farias'

---

[1] A claimant is ineligible for disability benefits if "drug addiction" would be a "contributing factor material" to a disability determination. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(C)). But here, Farias "testified that it has been a year and 10 months in remission from methamphetamines," Dkt. No. 8-1, at PageID.55 (AR at 35), and the ALJ did not discredit that testimony. Nor does the

impairments did not meet or medically equal the severity of an impairment that would qualify an individual as disabled without regard to age, education, or work experience. *Id.* at PageID.51-53 (AR at 31-33).  Accordingly, to determine whether Farias could perform past work (step four) or work that exists in significant numbers of jobs in the national economy (step five), the ALJ conducted an assessment of Farias' residual functional capacity, or "RFC," which is a measure of "the most one can still do despite one's limitations."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (cleaned up).

As an initial matter, the ALJ considered and rejected symptom statements from Farias and her mother on the ground that those "statements about the intensity, persistence, and limiting effects of the claimant's symptoms" were "inconsistent with the overall medical evidence and reported activities."  ECF No. 8-1, at PageID.55 (AR at 35).  Farias does not appeal that finding here.

The ALJ next turned to the medical opinions that touched on Farias' impairments, including four that supported Farias' claim of disability and one cutting in the other direction.  The ALJ found that none of the four supportive opinions was persuasive.

First, the ALJ considered the opinion of Carli Tamura, PsyD, who found "moderate limitations in performing complex tasks, regularly attending to a routine

---

Commissioner now argue that Farias should be ineligible for benefits because of past drug addiction.

and maintaining a schedule, and adapting/coping with a low demand, entry level job."

*Id.* at PageID.57 (AR at 37).  Dr. Tamura opined that Farias was "able to participate in

activities less than 30 hours weekly," with additional limitations.  *Id.*  The ALJ

concluded that Dr. Tamura's opinions were not persuasive, and his reasoning bears

quoting in full:

> The undersigned does not find Dr. Tamura's opinions persuasive since the
> limitations are vague, undefined, not well supported by Dr. Tamura's specific
> findings, nor consistent with, longitudinal exam findings that the claimant was
> clean and neat, normal speech and eye contact, calm and cooperative, euthymic
> mood, open affect, oriented times four, normal memory and attention, fair
> judgment, and linear thought process, no suicidal/homicidal ideations or
> audio/visual hallucinations (e.g., B8F/6, 7, 10, 11, 12; B9F/3;B10F/5, 6, 7, 8;
> B13F/12, 24, 25, 26, 29-34); friendly and congenial, easy to interview, dressed
> appropriately, clean, a good degree of intensity, excellent eye contact, speech
> within normal limits no significant difficulties with recall memory, including
> working, recent, and remote (B6F2); sequential, logical and goal directed thought
> processes, no obsessions, delusions or compulsions, no suicidal or homicidal
> ideations of hallucinations; no psychomotor agitation or retardation, expressive,
> reactive and spontaneous movements within normal limits (B6F/3).

*Id.* at PageID.57-58 (AR at 37-38).  In making these findings, the ALJ relied on exhibits—

from B8F, B9F, B10F, B13F, and B6F—containing notes that medical professionals took

between August 2022 and August 2023 of their observations of Farias during telehealth

appointments lasting approximately an hour, or (in the case of B6F) a single

teleconference evaluation of unknown length.  After listing the observations appearing

in these notes, the ALJ did not explain why he believed those notes were inconsistent

with Dr. Tamura's opinion.  That is, the ALJ did not explain why, in his view,

Dr. Tamura's opinion that Farias could not work more than 30 hours a week was

inconsistent with medical notes showing that Farias could manage one-hour telehealth appointments.  The ALJ also did not explain why he viewed Dr. Tamura's opinion as "not well supported by Dr. Tamura's specific findings."  Nor did the ALJ explain why he concluded that Dr. Tamura's opinions—which included a crystal-clear determination that Farias could not work more than 30 hour a week—were "vague" and "undefined." *See id.* at PageID.57 (AR at 37).

Second, the ALJ rejected the opinion of Cindy Klein, MSW, LCSW, who "completed a checkbox indicating marked limitations in all areas of sustained concentration and persistence," except for one area of moderate limitations, and "marked limitations in asking simple questions or requesting assistance and accepting instructions and responding appropriately to criticism from supervisors."  *Id.* at PageID.58 (AR at 38).  LCSW Klein also opined that Farias has an "inability to function more than 15% of an 8 hour workday."  *Id.*  The ALJ found LCSW Klein's opinion unpersuasive "since the limitations are vague, undefined, not well supported by KCSW Klein's specific findings . . . , nor consistent with, the longitudinal exam findings . . . ." *Id.*  The ALJ then repeated the list of observations memorialized in medical records, the same ones upon which the ALJ had relied to reject Dr. Tamura's opinion.  Here again, the ALJ only listed the longitudinal findings; the ALJ did not explain why he viewed them as inconsistent with LCSW Klein's opinions.  The ALJ did not explain why he had concluded that LCSW Klein's opinions were "not well supported" by her "specific

5

findings." Nor did the ALJ explain why he viewed LCSW's expressed limitations—which included a clear statement that Farias could not function more than 15 percent of an eight-hour workday—as "vague" and "undefined."

Third, the ALJ considered the opinions of Edward Wu, MD, who "completed a checkbox form indicating marked limitations in ability to understand and remember complex instructions; carry out complex instructions; make judgments on complex work related decisions; and moderate limitations in ability to interact and make judgments on simple work related decisions." *Id.* at PageID.39 (AR at 59). Dr. Wu opined that Farias' "ability to work is currently impaired due to lack of vocational skills and current psychiatric condition." *Id.* The ALJ found Dr. Wu's opinions unpersuasive "since the limitations are vague, undefined, not well supported by Dr. Wu's specific findings, nor consistent with, the longitudinal exam findings . . . ." *Id.* The ALJ then repeated the list of observations from the same medical records discussed in connection with Dr. Tamura and LCSW Klein. *Id.* Once again, the ALJ did not explain why he viewed these records as inconsistent with Dr. Wu's opinions, why he viewed Dr. Wu's opinions as "not well supported" by Dr. Wu's "specific findings," or why he viewed Dr. Wu's opinions as "vague" and "undefined." *Id.*

Fourth, the ALJ considered the opinion of Kaipo Lindsey, PA-C, who completed a checkbox "indicating the claimant could occasionally lift and carry up to 10 pounds, never handle or finger with the left hand, occasionally push pull, due to contracture and

6

deformity of the left hand, a limitation in left wrist flexion and opposition moving 3-5 digits." *Id.* at PageID.59 (AR at 39). PA-C Lindsey further opined that Farias' "mental health limits environmental stimuli as noises worsen mental health symptoms." *Id.* at PageID.59-60 (AR at 39-40). The ALJ found PA-C Lindsey's opinion unpersuasive, concluding that "the degree of the limitations are vague, undefined, not well supported by PA-C Lindsey's specific findings; nor consistent with occupational therapy notes during the relevant period from August 2021 to January 2023 showing progress, with increased range of motion in the wrist flexion and reduced finger hypertension in the metacarpophalangeal joints since starting therapy." *Id.* at PageID.60 (AR at 40). The ALJ again did not explain why he found PA-C Lindsey's opinions to be "vague" and "undefined," why he believed they were "not well supported" by PA-C Lindsey's "specific findings," or why the occupational therapy notes were inconsistent with PA-C Lindsey's opinions.

Having rejected the four medical opinions on which Farias' claim relied, the ALJ then found persuasive the one medical opinion, from Richard T. Sonnenberg, PhD, that cut the other way. *Id.* at PageID.59 (AR at 39). The ALJ noted that Dr. Sonnenberg found Farias had only a "mild impairment in interacting with the general public; a moderate impairment in interacting with coworkers/peers and supervisors; and a moderate impairment in ability to adapt to changes in work routine and manage everyday job demands." *Id.* at PageID.58 (AR at 38). The ALJ found this opinion

7

persuasive because it was "well supported by Dr. Sonnenberg's specific findings" and "consistent with the longitudinal exam findings." *Id.* at PageID.59 (AR at 39).

The ALJ therefore concluded that Farias has the RFC to "perform light work" with a number of limitations and accommodations. *Id.* at PageID.53 (AR at 33). While Farias did not have any past relevant work (step four), the ALJ concluded at step five that Farias could perform jobs that exist in significant numbers in the national economy—namely, price marker, mail sorter, and office helper. *Id.* at PageID.61 (AR at 41). As a result, the ALJ concluded that Farias was not "disabled" within the meaning of the Social Security Act since March 18, 2022, the date the application was filed. *Id.* at PageID.62 (AR at 42).

The Appeals Council thereafter denied Farias' request for review of the ALJ's decision, *id.* at PageID.21 (AR at 1), making the ALJ's decision the final decision of the Commissioner. This appeal followed. The court ordered supplemental briefing on the issue of harmless error, Dkt. Nos. 15-17, and held a hearing on September 29, 2025, Dkt. No. 21.

## STANDARD OF REVIEW

The Commissioner's disability determination must be affirmed unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). This standard is deferential, requiring "only such relevant evidence as a reasonable mind might accept as adequate to support a

8

conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).  That said, "substantial" means "more than a mere scintilla."  *Id*. (cleaned up).

Moreover, the court may only defer to those reasons the Commissioner—here, acting through an ALJ—actually offers.  "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).  That means a district court cannot affirm the Commissioner based merely on "what it assume[s] the ALJ to have determined."  *Id.* at 1226.

Even when an ALJ commits error, however, the court may still affirm if the error is harmless.  In the face of a failure to provide adequate explanations, for example, the court may still affirm if "the agency's path may reasonably be discerned."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (cleaned up).  And if an ALJ offers a reason for discrediting evidence that proves to be erroneous, a court might still affirm if the ALJ provided "numerous other record-supported reasons for discrediting" the evidence.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).  But this harmless error standard is not unbounded.  As the Ninth Circuit has cautioned, "if the Commissioner's request that we dismiss the ALJ's error as harmless invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline."  *Id.* at 1054 (cleaned up).

**DISCUSSION**

In this appeal, Farias challenges the adequacy of the ALJ's stated reasons for rejecting the four medical opinions that supported Farias' claim.

Under governing Social Security Administration regulations, an ALJ must "utilize several factors to evaluate the persuasiveness of a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Wade v. O'Malley*, Civil No. 23-00350, 2024 WL 3248021, at *3 (D. Haw. Feb. 16, 2024) (cleaned up).[2]

Although the list of factors is long, two of them are preeminent: "supportability" and "consistency." *Id.* "Supportability" is "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id.* at *4 (cleaned up). It is, in other words, a question of how well a medical opinion supports itself. "Consistency," by contrast, focuses "whether the medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (cleaned up). That assessment asks how well a medical opinion is supported by other evidence in the administrative record.

---

[2] These regulations apply to all applications that, like Farias', were made after March 27, 2017. *See Woods*, 32 F.4th at 789.

Given the importance of the supportability and consistency factors, ALJs must explain how they considered these factors, and their explanations must be supported by substantial evidence. *Id.*; *see also Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) ("ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'").

The principal question in this appeal, therefore, is whether the ALJ offered an adequate explanation of how he considered supportability and consistency in Farias' case. If the ALJ did not offer a sufficient explanation, the next question is whether any error was harmless.

### A.    Supportability

We begin with supportability and ask whether the ALJ adequately explained his consideration of that factor.

In rejecting the medical opinions of Dr. Tamura, LCSW Klein, Dr. Wu, and PA-C Lindsey, the ALJ wrote that each opinion was unpersuasive because it was "vague, undefined, not well supported by [the opinion's] specific findings, nor consistent with, the longitudinal exam findings." But even if we accept that calling the medical opinions "vague," "undefined," and "not well supported" by their "specific findings" qualifies as a conclusion about the supportability factor—which is not obvious—the ALJ only offered these conclusions and did not explain how the conclusions were reached. The

11

ALJ did not explain why each medical opinion was "vague" (let alone what about each opinion was so).  The ALJ did not explain why each medical opinion was "undefined" (let alone in what particular).  And the ALJ did not explain why each medical opinion was "not well supported" by their "specific findings."

It would be difficult to contend that these qualify as sufficient explanations of the supportability factor, and to his credit, the Commissioner does not seriously press that contention here.  His argument, instead, is that an ALJ *need not* offer an adequate explanation of how he considered supportability.  In the Commissioner's view, it is enough that "the ALJ made a factual determination" that an opinion "was unsupported."  Dkt. No. 13, at PageID.613.  Once an ALJ offers that bottom-line conclusion, the Commissioner's position would require the court to sift through the "existing administrative record" to see if it can find "sufficient evidence to support this conclusion."  *Id.*

It is true that in considering whether an ALJ's reasoning is supported by substantial evidence, the court must examine the entire administrative record.  But it is a leap too far to say that if the ALJ has not adequately revealed his reasoning, the court must try to divine what those reasons might have been, and then look for evidence in the administrative record to support those imagined reasons.  Indeed, the court is not authorized to engage in "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray*, 554 F.3d at 1225.  It may not affirm an

12

agency decision merely because it can conjure reasons that find adequate support in the
administrative record; it may only affirm the agency if the agency articulated those
record-supported reasons itself.

The Commissioner pushes against these principles with a quotation from the
introductory paragraph of the Ninth Circuit's decision in *Woods*, in which that court
wrote that "the ALJ's decision regarding the medical opinions must 'simply be
supported by substantial evidence.'"  Dkt. No. 13, at PageID.612 (quoting *Woods*, 32
F.4th at 787).  That sentence, standing alone, can be read as providing some support for
the Commissioner's position.  But a legal opinion must be read as a whole, and the body
of the opinion in *Woods* fleshes out the meaning of that more concise introductory
statement.  There, the Ninth Circuit clarifies that "an ALJ cannot reject [a medical]
opinion as unsupported or inconsistent without providing an explanation supported by
substantial evidence."  *Woods*, 32 F.4th at 792.  As the Ninth Circuit explains, an ALJ
must "articulate how persuasive it finds all of the medical opinions from each doctor or
other source, and explain how it considered the supportability and consistency factors
in reaching these findings."  *Id.* (cleaned up).  In other words, it is not enough that
substantial evidence might exist in the administrative record to support conceivable
reasons for concluding that a medical opinion lacks supportability; the ALJ must
actually articulate his own reasons for reaching that conclusion.

The Commissioner nonetheless offers several reasons that the ALJ might have had in mind when reaching that conclusion.  For example, the Commissioner asserts that Dr. Tamura "indicated that Plaintiff could work for 'less than 30 hours weekly,' but justified this by reference to Plaintiff's self-reported '[s]ymptoms of depression and anxiety' instead of objective medical evidence."  Dkt. No. 13, at PageID.613.  But "[t]hat is what the Commissioner argues—not what the ALJ said."  *Wade*, 2024 WL 3248021, at *5.  The ALJ nowhere found that Dr. Tamura's opinion was based solely on Farias' self-reports (as opposed to, for example, Dr. Tamura's own evaluations of Farias).  Perhaps the Commissioner might alternatively suggest that Dr. Tamura did not adequately explain the nature of her own evaluations.  But there again, that would be the Commissioner's suggestion, rather than the ALJ's own finding.

The same goes for the other medical opinions.  The Commissioner offers that LCSW Klein "did not explain any link between [her identified] limitations and objective medical evidence;" that Dr. Wu did not identify facts that would support his assessment and did not explain what Farias' specific limitations were; and that PA-C Lindsey did not explain how Farias' impairment "led to the specific limitations PAC-Lindsey described."  Dkt. No. 13, at PageID.616-18.  But none of these reasons or findings appears in the ALJ's written decision—as evidenced by the fact that the Commissioner does not cite the ALJ's decision in support of any of them.

14

The ALJ's written decision does not adequately explain the ALJ's consideration of the supportability factor. And the failure to do so was error.

**B.    Consistency**

Farias argues that the court may reverse the ALJ's decision based solely on the ALJ's failure to adequately explain his consideration of the supportability factor, without resolving whether a similar error infected the ALJ's consideration of the consistency factor. The Commissioner contests this view, arguing that an ALJ's opinion should be affirmed if *either* the supportability *or* consistency evaluation is appropriate.

The court need not resolve that question because it concludes that the ALJ's written decision also failed to adequately explain the ALJ's consideration of the consistency factor. As to each of the four medical opinions on which Farias relied, the ALJ simply repeated a long summary of observations recorded in the notes of telehealth appointments between August 2022 and August 2023. These notes reflect that Farias showed up on time for these appointments and was generally well-composed during them. But the ALJ offered no explanation of *why* these notes contradicted any of the medical opinions. The ALJ therefore did not offer a sufficiently clear statement of his reasoning to allow for meaningful judicial review.

For example, the ALJ cited the fact that in telehealth appointments, Farias was "clean and neat." *See, e.g.*, Dkt. No. 8-1, at PageID.56 (AR at 36) But the ALJ did not explain why the fact that Farias was able to appear "clean and neat" at telehealth

15

appointments contradicted medical opinions that Farias' mental health impairments

precluded Farias from working full time.  The same goes for the ALJ's statement that

Farias appeared with "normal speech and eye contact, clam and cooperative, euthymic

mood, open affect, oriented times four, normal memory and attention, fair judgment,

and linear thought process, no suicidal/homicidal ideations or audio/visual

hallucinations," or any the other items in the long list of observations appearing in the

telehealth appointment records.  *See id.*  One might speculate as to how some of these

observations might support a conclusion that Farias' mental health impairments are not

as severe as the medical opinions suggest.  But nothing in the ALJ's written decision

explains why the ALJ himself reached that conclusion.

    The Commissioner nonetheless suggests that the ALJ must have found that

because Farias' "mental examinations are all mostly or completely normal, the only

reasonable thing to conclude is that those examinations conflict with an opinion

suggesting that the claimant's mental functioning is markedly limited, i.e. is highly

abnormal."  Dkt. No. 13, at PageID.615.  But that is not the only "reasonable thing" one

might conclude from this record.  It is equally possible one might conclude—as the

medical professionals themselves did—that a person who is generally able to

participate in an hour-long telehealth appointment every couple of weeks might still

have difficulty working for 40 hours a week.  The problem, then, is that the ALJ offered

no explanation for why he chose to accept one interpretation of the medical records as

16

opposed to another available one.  And while the "ALJ, as the finder of fact, is

responsible for weighing the evidence, resolving conflicts and ambiguities, and

determining credibility," *Wade*, 2024 WL 3248021, at *2, the ALJ errs where, as here, he

has not adequately explained why he made his findings.

     C.     **Harmless Error**

As the Ninth Circuit has recognized, "harmless error applies in the Social

Security context" and a decision of the ALJ should not be "reversed for errors that are

harmless."  *Stout*, 454 F.3d at 1054 (cleaned up).  So the final question presented here is

whether the ALJ's errors—that is, the ALJ's failure to adequately explain his

consideration of the supportability and consistency factors—are harmless.

1.  As noted, the Commissioner has supplied his own reasons to explain why the

ALJ might have reached his supportability and consistency conclusions.  To the extent

the Commissioner's contention is that the ALJ's errors are harmless because one might

readily discern that these indeed were the ALJ's (unstated) reasons, the court disagrees.

It is true, to be sure, that if "the agency's path may reasonably be discerned, even

if the agency explains its decision with less than ideal clarity," the error is harmless.

*Brown-Hunter*, 806 F.3d at 492 (cleaned up).  But in this case, the ALJ did not merely

express his supportability finding with "less than ideal clarity;" rather, the ALJ failed to

"set forth the reasoning behind [his] decisions in a way that allows for meaningful

review."  *Id.*  The ALJ's written decision does not reveal whether the ALJ made (or

would make) findings of the sort the Commissioner proposes.  Given that this court

"may not make independent findings based on the evidence before the ALJ to conclude

that the ALJ's error was harmless," *id.*, it cannot affirm on the grounds the

Commissioner proposes here.

It is possible that, on remand, the ALJ will agree with the Commissioner's

suggestions.  But that is merely an assumption.  And given that this court may not

affirm the Commissioner based merely on "what it assume[s] the ALJ to have

determined," *Bray*, 554 F.3d at 1226, it surely cannot affirm based on what it might

assume the ALJ *would* determine on remand.

2.  To ensure that it carefully considered the question of harmless error, the court

ordered supplemental briefing on a different possible route to find harmless error.  In

this case, the ALJ rejected the credibility of Farias' self-reports, and Farias does not

challenge that finding in this appeal.  *See supra* p.3.  If the medical opinions favoring

Farias were founded upon Farias' self-reports, then, it might be said that the ALJ did

articulate a reason for rejecting the medical opinions—even though the ALJ did not

articulate those reasons specifically in the section of his written decision dealing with

supportability and consistency.  If all of that were true, it would mean that while the

ALJ still erred by failing to explain his consideration of the supportability and

consistency factors, that error would have been immaterial or harmless to the outcome.

18

Having reviewed the parties' helpful supplemental submissions, however, the
court concludes that it cannot find harmless error on this ground.  As the Ninth Circuit
explained in *Buck v. Berryhill*, while a "physician's opinion of disability premised to a
large extent upon the claimant's own accounts of his symptoms and limitations may be
disregarded where those complaints have been properly discounted," the same is not
readily true of mental health opinions.  869 F.3d 1040, 1049 (9th Cir. 2017).  While
"[p]sychiatric evaluations may appear subjective," and while "[d]iagnoses will always
depend in part on the patient's self-report, as well as on the clinician's observations of
the patient," such "is the nature of psychiatry."  *Id.*  Therefore, "the rule allowing an
ALJ to reject opinions based on self-reports does not apply in the same manner to
opinions regarding mental illness."  *Id.*  When a mental health opinion is based on "a
clinical interview and a mental status evaluation," these are "objective measures and
cannot be discounted as a 'self-report.'"  *Id.*

In this case, although the ALJ discounted Farias' self-reports, the ALJ did not
find that the medical opinions were based on Farias' self-reports.  And while the
medical opinions do not appear to identify other objective grounds for their
conclusions, the Ninth Circuit's guidance is that "a clinical interview and a mental
status evaluation" are themselves "objective measures."  *Id.*  It follows that if the ALJ
had intended to reject the medical opinions on the ground that they were based on self-

reporting, he needed to say so himself, given that one cannot readily assume that

mental health opinions are so founded.  The ALJ did not say so here.

**CONCLUSION**

The Commissioner's decision denying Farias' applications for Social Security

disability insurance benefits is REVERSED and REMANDED for further administrative

proceedings consistent with this order.

IT IS SO ORDERED.

DATED:  October 8, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

_____

Micah W.J. Smith
United States District Judge

---

Civil No. 25-00139 MWJS-KJM, *Alton Farias v. Frank Bisignano*; ORDER REVERSING
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS